CFN: 20230184315 BOOK 33617 PAGE 3886
DATE:03/10/2023 04:28:57 PM
MTG DOC 3,215.80
INTANGIBLE 1,837.50
LUIS G. MONTALDO, CLERK AD INTERIM
MIAMI-DADE COUNTY, FL

This Instrument prepared by:
**JEFFREY E. LEVEY, P.A.**
Jeffrey E. Levey, Esq.
9130 South Dadeland Blvd
Suite 1607
Miami, FL 33156

ALL DOCUMENTARY STAMPS AND INTANGIBLE TAXES HAVE BEEN PAID TO THE CLERK OF THE CIRCUIT COURT, MIAMI-DADE COUNTY, FLORIDA

7233 Los Pinos, LLC, A FLORIDA LIMITED LIABILITY COMPANY
as MORTGAGOR
to

SMGRA4, LLC, A FLORIDA LIMITED LIABILITY COMPANY,
as MORTGAGEE

AMENDED, RESTATED AND CONSOLIDATED MORTGAGE AND SECURITY AGREEMENT AND NOTICE OF FUTURE ADVANCE

Dated as of MARCH __3__, 2023
Effective as of FEBRUARY 15, 2023

NOTICE TO CLERK: THIS INSTRUMENT SECURES THE NOTE DESCRIBED HEREIN. ALL DOCUMENTARY STAMP TAXES AND INTANGIBLE TAXES DUE IN CONNECTION WITH THE EXISTING NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $4,481,250.00 (THE "PRIOR NOTE") WERE PAID AT THE TIME OF THE ORIGINAL MORTGAGE DESCRIBED HEREIN. OF EVEN DATE HEREWITH, THE PRIOR NOTE HAS BEEN ASSIGNED TO MORTGAGEE, AND MORTGAGEE IS INCREASING THE PRINCIPAL AMOUNT OF THE LOAN EVIDENCED BY THE PRIOR NOTE TO $5,400,000.00. ADDITIONAL DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $3,215.80 AND INTANGIBLE TAXES IN THE AMOUNT OF $1,837.50, BASED ON THE DIFFERENCE OF $918,750.00 BETWEEN THE FACE AMOUNT OF THE NOTE AND THE FACE AMOUNT OF THE PRIOR NOTE, ARE BEING PAID WITH THE RECORDATION OF THIS MORTGAGE.

1

# AMENDED, RESTATED AND CONSOLIDATED MORTGAGE AND SECURITY AGREEMENT AND NOTICE OF FUTURE ADVANCE

THIS MORTGAGE and SECURITY AGREEMENT executed this 3rd day of **March, 2023**, and effective as of **February 15, 2023**, by **7233 Los Pinos, LLC, a Florida limited liability company,** whose address is **299 Alhambra Circle, Suite 510, Coral Gables, Florida 33134** (the "Mortgagor") to **SMGRA4, LLC, a Florida limited liability company, its successors and/or assigns as their interest may appear** whose address is **2511 Anderson Road, Coral Gables, Florida 33134** (the "Mortgagee").

## W I T N E S S E T H:

This Instrument amends and restates that certain Mortgage, Deed and Security Agreement recorded in O.R. Book 32874, Page 661 of the Public Records of Miami-Dade County, Florida (the "Original Mortgage"), which Original Mortgage has been assigned by Scopus US Invest 4 LLC, a Delaware limited liability company ("Scopus") to Mortgagee by Assignment of Note, Mortgage and Loan Documents of even date herewith which is being recorded among the Public Records of Miami-Dade County, Florida immediately prior to the recording of this instrument (the "Assignment of Mortgage").

Pursuant to the Assignment of Mortgage and further pursuant to that certain Allonge of even date herewith executed by Scopus, in favor of Mortgagee, Mortgagee is the holder of the Prior Note (as defined in the legend on the face page of this Mortgage) and, concurrently with the execution and delivery of this Mortgage, (i) Mortgagee is advancing to Mortgagor the sum of $918,750.00, as a future advance under the Original Mortgage (the "Future Advance") and (ii) Mortgagor, as maker, is executing in favor of Mortgagee, as payee, a Consolidated and Replacement Promissory Note of even date herewith, in the original principal amount of **Five Million Four Hundred Thousand and 00/100 Dollars ($5,400,000.00)** (the "Promissory Note") which consolidates and replaces the Prior Note and the Future Advance.

Mortgagor acknowledges that it has no defenses, counterclaims or offsets with respect to any of its obligations contained in the Original Mortgage or the Prior Note.

That for good and valuable consideration, including, but not limited to, the aggregate sum of money named in the Promissory Note, Mortgagor grants, bargains, sells, aliens, remises, releases, conveys and confirms to Mortgagee, in fee simple, the

2

following described real estate, of which Mortgagor is now seized and possessed and in actual possession, situate in the County of **Miami-Dade County**, State of Florida to-wit:

> **Lot 5, in Block 9, COCOPLUM SECTION ONE, according to the map or plat thereof, as recorded in Plat Book 99, Page 39, of the Public Records of Miami-Dade County, Florida.**

TOGETHER WITH all structures and improvements now or hereafter on the land, and the fixtures attached to it, and all mechanical systems, appliances, equipment, fixtures, landscaping and appurtenances which are now or may hereafter pertain to or be used with, in or on the premises, though they be either detached or detachable.

TOGETHER WITH all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, all permits and governmental approvals, and all estates, rights, title, interest, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the property described above, or which hereafter shall in any way belong, relate or be appurtenant to it, whether now owned or hereafter acquired by Mortgagor, and the reversion and reversions, remainder and remainders, rents, issues, and profits of it, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of Mortgagor of, in and to the same, including, but not limited to all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the mortgaged property or any part of it under the power of eminent domain, the alteration of the grade of any street, or for any damage (whether caused by any taking or otherwise to the mortgaged property or any part of it, or to any rights appurtenant to it) and all proceeds of any sales or other dispositions of the mortgaged property or any part of it (all of which, together with the land, the improvements, the rights, titles and interests described in this Mortgage, and any additional property hereafter acquired by Mortgagor and subject to the lien of this Mortgage or intended to be, is the "Mortgaged Property").

TOGETHER WITH a security interest in: (i) all property, equipment, fixtures and improvements owned by Mortgagor affixed to or located upon the land; (ii) all articles of personal property and all materials delivered to the Mortgaged Property for use in any construction being conducted on it and owned by Mortgagor; (iii) all contract rights, general intangibles, actions and rights of action, including all rights to insurance proceeds; and, (iv) all proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing. Mortgagor grants to Mortgagee a security interest in all fixtures, rights in action and personal property described in this Mortgage. This Mortgage is a self-operative security agreement with respect to the property, but Mortgagor agrees to execute and deliver on demand any other security agreements, financing statements and other instruments as Mortgagee may request in order to confirm, perfect, preserve and maintain its security interest or to impose the lien or priority of this Mortgage more specifically upon any of the property. Mortgagor shall pay to Mortgagee, on demand, any reasonable expenses incurred by Mortgagee in connection with the preparation, execution and filing of any such documents. Mortgagee shall have,

in addition to those rights and remedies specified in this Mortgage, all the rights and remedies of a secured party under the Uniform Commercial Code as enacted in the State of Florida.

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances, unto Mortgagee, in fee simple.

AND MORTGAGOR covenants with Mortgagee that Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple; that Mortgagor has full power and lawful right to convey the Mortgaged Property in fee simple as aforesaid; that it shall be lawful for Mortgagee at all times peaceably and quietly to enter upon, hold and occupy the Mortgaged Property; that the Mortgaged Property is free and clear of all other and prior and subordinate liens, assessments, judgments, taxes and encumbrances except taxes for the current year which are not yet due and payable and those matters specifically set forth in this Mortgage and shall remain free and clear of those matters for so long as the indebtedness secured by this Mortgage remains outstanding; that Mortgagor will make all further assurances to perfect the fee simple title to Mortgaged Property in Mortgagee as may reasonably be required; and that Mortgagor does warrant the title to the Mortgaged Property and will defend the same against the lawful claims of all persons whomsoever.

PROVIDED ALWAYS that if the Mortgagor shall pay to the Mortgagee the sum of money aggregating **Five Million Four Hundred Thousand and 00/100 Dollars ($5,400,000.00)** evidenced by the Promissory Note, and due and payable in the manner specified in that instrument, together with interest as provided in it, and shall pay all other sums provided to be paid by this Mortgage, and shall perform, comply with and abide by the stipulations, agreements, conditions and covenants of the Promissory Note, this Mortgage, the Construction Loan Agreement of even date herewith executed by Mortgagor and Mortgagee (the "Loan Agreement"), and of any other agreement or document executed in connection this loan transaction (each a "Loan Document" and collectively, the "Loan Documents"), then this Mortgage and the estate created by this Mortgage shall cease and be null and void.

And the Mortgagor further covenants and agrees as follows:

1.     To pay all and singular the principal and interest and other sums of money payable by virtue of the Promissory Note and this Mortgage, promptly on the days respectively the same severally come due.

2.     Promptly to pay when due all and singular, each and every, taxes (including, without limitation, documentary stamp and intangible taxes), assessments, levies, water, sewer and waste charges, license fees, liabilities, obligations and encumbrances of every nature in connection with or with respect to this Mortgage, the Promissory Note or the Mortgaged Property, and to deliver to Mortgagee, on or before March 1, of each year, tax receipts evidencing the payment of all lawfully imposed real estate taxes upon the Mortgaged Property for the preceding calendar year; to deliver to Mortgagee receipts

4

evidencing the payment of all liens for public improvements within thirty (30) days after same shall become due and payable, and to pay or discharge within thirty (30) days prior to the due date, any and all governmental levies that may be made on the Mortgaged Property, on this Mortgage or the Promissory Note or in any other way resulting from the indebtedness secured by this Mortgage. If the same shall not be promptly paid, the Mortgagee may, at any time either before or after delinquency, pay the same without waiving or affecting its option to foreclose or any right under this Mortgage, and every payment so made shall be secured by the lien of this Mortgage and shall bear interest from the date of it at the maximum rate of interest permitted to be charged to Mortgagor under Florida law (the "Default Rate").

3.     To keep the buildings, fixtures, chattels, improvements and personal property now or hereafter on the Mortgaged Property and the fixtures and personal property contained in it, insured in a company or companies approved by the Mortgagee, with extended coverage and broad form coverage, against loss or damage by fire, flood, windstorm, lightning, hail, riot, vehicles, explosion, smoke, falling objects, collapse, breakage of glass, sprinkler leakage, water damage, vandalism and malicious mischief, theft and such other perils as Mortgagee may from time to time require in the amounts as Mortgagee may reasonably require and so that Mortgagee's interest is not subject to co-insurance, and the policy or policies shall contain a Standard Mortgagee Clause, provide for thirty (30) days prior written notice to Mortgagee of cancellation, be held by and be payable to Mortgagee, and, if requested by Mortgagee, include a waiver of subrogation clause. In the event of loss, Mortgagor shall give prompt notice by mail to Mortgagee and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payments for such loss directly to Mortgagee instead of either to Mortgagor or to Mortgagee and Mortgagor jointly. Mortgagee shall have the option to receive and apply all payments on account of the indebtedness secured by this Mortgage (and, in connection with it, Mortgagee shall have the right to settle, adjust and compromise any claims for loss, damage or destruction), or permit Mortgagor to receive or use all or any part of those payments, for any purposes without waiving or impairing the equity, lien or right under and by virtue of this Mortgage. If Mortgagor defaults in so insuring the Mortgaged Property or any part thereof or in so assigning and delivering the policies, at its option Mortgagee may affect such insurance from year to year and pay the premiums therefor, and any such sums advanced by Mortgagee shall bear interest, shall be paid and shall be secured as provided in Paragraph 2. Mortgagor shall maintain liability insurance with a company approved by Mortgagee in an amount as Mortgagee may require and Mortgagee shall be named an additional insured. Not less than thirty (30) days prior to the expiration of each policy furnished by Mortgagor under this paragraph, Mortgagor will deliver to Mortgagee a renewal policy or policies accompanied by evidence of payment satisfactory to Mortgagee. In the event of a foreclosure of this Mortgage, the purchaser of the Premises shall succeed to all the rights of Mortgagor in and to all policies of insurance required under this Mortgage, including any right to unearned premiums. Each policy of insurance required under this Mortgage shall be non-cancelable without at least thirty (30) days' advance written notice to Mortgagee. Mortgagor assigns and will deliver to Mortgagee all policies of insurance as additional

5

security and in the event of a foreclosure of this Mortgage, the purchaser of the Mortgaged Property shall succeed to all rights of Mortgagor under all policies of insurance, including rights to proceeds and unearned premiums. Mortgagor shall maintain such additional insurance as may be reasonably necessary to meet and comply with all co-insurance requirements to the end that Mortgagor is not a co-insurer under any of the insurance policies. Mortgagee shall have the right to review the forms, coverages, amounts, and duration of such insurance policies from time to time and to require, upon giving Mortgagor thirty (30) days advance written notice thereof, that the forms, coverages, amounts, or duration of such policies be changed or modified so as to reasonably protect Mortgagee's interests. Mortgagor shall maintain such additional insurance covering such other risks as the Mortgagee may reasonably require in such amounts and forms as Mortgagee shall reasonably require.

4. To keep the Mortgaged Property in good order and repair, to operate the Mortgaged Property in a first class manner, promptly to repair, replace or restore any part of the Mortgaged Property which may become damaged, destroyed, lost or unsuitable for use, not to remove, demolish or materially alter any buildings now or hereafter erected on the Mortgaged Property and to permit, commit and suffer no waste, impairment, abandonment or deterioration of the Mortgaged Property, or any part of it, and upon the failure of Mortgagor to continuously keep the buildings and personal property on the Mortgaged Property in first class condition and repair, Mortgagee may demand any or all of the following in addition to any other remedies provided in this Mortgage, at law or in equity: the immediate repair or restoration of the Mortgaged Property, an increase in the amount of security, or the immediate repayment of the debt secured by this Mortgage. Mortgagee shall have the right from time to time upon reasonable written notice to inspect the Mortgaged Property.

5. Promptly to perform, comply with and abide by: (i) all present and future laws, ordinances, regulations and rules of any governmental authority affecting the Mortgaged Property; and, (ii) any restrictive covenants affecting the Mortgaged Property, and not suffer or permit any violations of them.

6. Promptly to perform, comply with and abide by each and every stipulation, agreement, condition and covenant set forth in the Promissory Note, this Mortgage and any of the other Loan Documents, all at Mortgagor's sole cost and expense.

7. To pay all and singular the costs, charges, and expenses, including reasonable attorney's (including paralegals') fees (whether or not suit is instituted and in connection with all proceedings, including post judgment proceedings), incurred or paid at any time by Mortgagee because of the failure of Mortgagor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Promissory Note or this Mortgage, and every payment shall bear interest from the date of payment at the Default Rate.

8. That if any action or proceeding shall be commenced to which the holder of this Mortgage is made a party, or in which it shall become necessary to defend or uphold

6

the lien of this Mortgage, all sums paid by the holder of this Mortgage for the expense of any litigation to prosecute or defend the rights and liens created by this Mortgage or otherwise (including reasonable attorneys' and appellate attorneys' fees, which shall include paralegals' fees, in connection with all proceedings, including post-judgment proceedings, and regardless of the merits or outcome of those proceedings) shall be paid by Mortgagor, together with interest on it at the Default Rate, and any sum and the interest on it shall be a claim upon the Mortgaged Property and shall be deemed to be secured by this Mortgage and shall be payable by Mortgagor immediately upon demand by Mortgagee, and the failure of Mortgagor to do so shall constitute a default of the Promissory Note and this Mortgage.

9.      That acceptance of part payment of any installment of principal or interest or both, or of part performance of any covenant or delay for any period of time in exercising the option to mature the entire debt, shall not operate as a waiver of the right to exercise any option or act on any default, partial acceptance or any subsequent default.

10.     In the event of a default in any of the terms of this Mortgage, or the filing of a complaint or other form of pleading to foreclose this or any other mortgage or lien encumbering the Mortgaged Property or any portion of it, the Mortgagee shall immediately be entitled, as a matter of right and without regard to the value of the Mortgaged Property or solvency or insolvency of the parties, to the appointment (without notice to Mortgagor, which notice Mortgagor waives) of a Receiver of the Mortgaged Property, both real and personal, and of the rents, issues and profits of it, with the usual power of Receivers in those cases, and the Receiver may be continued in possession of the Mortgaged Property until the time of the sale of it, under any foreclosure, and until the confirmation of any sale by the Court, or until Mortgagee consents to his withdrawal. All expenses of the Receiver shall be payable by Mortgagor and those amounts shall be secured by this Mortgage. The foregoing is agreed to, in part, in recognition of the fact that a delay in the management, development, disposition or other activity involving the Mortgaged Property may substantially adversely affect Mortgagee's security.   MORTGAGOR HEREBY SPECIFICALLY WAIVES THE RIGHT TO OBJECT TO THE APPOINTMENT OF A RECEIVER AS AFORESAID AND HEREBY EXPRESSLY CONSENTS THAT SUCH APPOINTMENT SHALL BE MADE AS AN ADMITTED EQUITY AND AS A MATTER OF ABSOLUTE RIGHT TO MORTGAGEE AND AGREES THAT THE SAME MAY BE DONE WITHOUT NOTICE TO MORTGAGOR. MORTGAGOR FURTHER AGREES THAT THE RECEIVER SHALL HAVE ALL RIGHTS CONFERRED BY LAW, AND, IF NOT CONFERRED BY LAW, THE RIGHT TO COMPLETE ANY CONSTRUCTION ALREADY COMMENCED ON THE PREMISES AND/OR TO MAKE NECESSARY REPAIRS TO KEEP THE MORTGAGED PROPERTY IN PROPER CONDITION DURING THE PERIOD OF RECEIVERSHIP.

11.     If foreclosure proceedings should be instituted on any mortgage superior or inferior to this Mortgage or if any foreclosure proceeding is instituted on any lien of any kind which affects the Mortgaged Property or any portion of it, Mortgagee may, at its option, immediately or thereafter declare this Mortgage and the indebtedness secured by this Mortgage due and payable. Any default on any mortgage superior or inferior to this

CFN: 20230164315 BOOK 33617 PAGE 3893

Mortgage, including failure to pay any mortgage when due and in accordance with its terms or failure to abide by the terms of any mortgage, shall be deemed a breach of this Mortgage and Mortgagee, at its option, may immediately or thereafter declare this Mortgage and the indebtedness secured by this Mortgage due and payable.

12.    Any notice, statement, demand or other communication required or permitted to be given or made by either party under this Mortgage or under any other Loan Document shall be in writing and shall be deemed properly given and made if served personally or if sent by independent hand delivery or by nationally recognized overnight courier to the addresses first set forth above or at any other address as may from time to time be designated in writing in conformity with this Mortgage.  Notice given by the attorney for any party shall be as effective as if given by that party.

13.    Mortgagor shall be in default under this Mortgage and the Promissory Note upon the happening of any of the following events, circumstances or conditions (each is an "Event of Default"), to wit:  (a) If Mortgagor shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or insolvent, or shall file any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, wage earner's plan, assignment for the benefit of creditors, receivership, dissolution or similar relief under any present or future Federal Bankruptcy Code or any other present or future applicable federal, state or other statute or law, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Mortgagor or all or any part of the properties of Mortgagor; or (b) if, within thirty (30) days after commencement of any proceeding against Mortgagor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, debtor relief or similar relief under any present or future Federal Bankruptcy Code or any other present or future federal, state or other statute or law, that proceeding shall not have been dismissed, or stayed on appeal; or (c) if, within thirty (30) days after the appointment, without the consent or acquiescence of Mortgagor, of any trustee, receiver, or liquidator of Mortgagor, or of all or any portion of the Mortgaged Property, that appointment shall not have been vacated or stayed on appeal or otherwise; or (d)  if, within ten (10) days after the expiration of any stay, that appointment shall not have been vacated; or (e)  if there are any attachments or garnishments issued against Mortgagor or any Guarantor which are not discharged or bonded off within thirty (30) days after such issuance; or (f) if a judgment is entered against the Mortgagor or any guarantor which is not satisfied or bonded off within thirty (30) days after the rendition thereof; or (g)  there is a material adverse change as more specifically defined in Section 12(e) of the "Loan Agreement" executed contemporaneously herewith (the "Loan Agreement"); or (h)  if Mortgagor fails to furnish annually to Mortgagee updated financial statements within the latter of 20 days following Mortgagee's written request, or ninety (90) days of the end of each fiscal year of Mortgagor, including a sworn itemized statement on all annual earnings and expenses of the Property, and copies of Federal Income Tax Returns within the latter of 20 days following Mortgagee's written request or forty-five (45) days of submission of same to the IRS, all prepared in form and substance reasonably acceptable to Mortgagee; or (i) upon the death or incapacity of any Mortgagor or guarantor or dissolution of any entity comprising the Mortgagor or any guarantor; or (j) any material warranty, representation,

certification or statement of the Mortgagor or any guarantor pertaining to or in connection with the loan evidenced by the Promissory Note (the "Loan") was not true when made; or (k) any breach of or failure to fulfill or carry out any of the non-monetary covenants contained in this Mortgage, the Promissory Note or any of the Loan Documents, and twenty (20) days grace period after Mortgagee's written notice of such non-monetary default or (l) Mortgagor's filing for record, without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, of any notice limiting the maximum principal amount that may be secured by this Mortgage to an amount less than the limit set forth in the future advance clause on the first page of this Mortgage; or (m) any sale, transfer (whether voluntary or by operation of law), pledge, hypothecation or further encumbrancing of all or any part of the Mortgaged Property or any interest therein or any interest in Mortgagor, or the additional assignment of all or any part of the rents, income or profits arising therefrom, in either case without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion; or (n) Mortgagor's failure to remove any involuntary lien on the Mortgaged Property or any part thereof within twenty (20) days after its service, or the service of any suit against the Mortgaged Property upon any claim or lien other than this Mortgage (whether superior or inferior to this Mortgage); or (o) Mortgagor's failure to comply, within ten (10) days, with a requirement, order or notice of violation of a law, ordinance, or regulation issued or promulgated by any political subdivision or governmental department claiming jurisdiction over the Mortgaged Property or any operation conducted on the Mortgaged Property (or, if such order or notice provides a time period for compliance, Mortgagor's failure to comply within such period), or, in the case of a curable noncompliance requiring longer than the applicable time period for its cure, Mortgagor's failure to commence to comply with said order or notice within said period or failure thereafter to pursue such cure diligently to completion; or (p) the issuance of any order by the State of Florida, or any subdivision, instrumentality, administrative board or department thereof, declaring unlawful or suspending any operation conducted on the Mortgaged Property; or (q) the filing by the United States of America or any instrumentality thereof in any court of competent jurisdiction of any notice of intention to acquire under the power of eminent domain any estate less than an estate in fee simple in the entire Mortgaged Property, or the recording by the State of Florida, any instrumentality thereof or any other person with eminent domain powers, of a notice of taking of any estate less than an estate in fee simple in the entire Property; or (r) if Mortgagor or any guarantor (each is an "Obligor") shall have concealed, transferred, removed, or permitted to be concealed or transferred or removed, any part of such Obligor's property with intent to hinder, delay or defraud any of such Obligor's creditors, or if any Obligor shall have made or suffered a transfer of any of such Obligor's properties which may be invalid under any bankruptcy, fraudulent conveyance, preference or similar law, or if any Obligor shall have made any transfer of such Obligor's properties to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid. Upon the occurrence of an Event or Default, this Mortgage shall be in default and the unpaid balance of the Promissory Note with all accrued interest on it and all monies secured by it shall, at the option of the Mortgagee, become immediately due and payable, and Mortgagee shall have any other remedies provided herein, in the Promissory Note, in any other Loan Document or as otherwise provided at law or in equity.

9

14.     If any of the sums of money referred to in this Mortgage or the Promissory Note are not promptly and fully paid after the same severally come due and payable, or if each and every stipulation, agreement, condition and covenant of the Promissory Note and this Mortgage, or any other Loan Document, is not duly performed and abided by, prior to the expiration of any applicable grace periods, the aggregate sum mentioned in the Promissory Note then remaining unpaid, with accrued interest, and any applicable prepayment penalty or deferred loan origination fee and all monies secured by this Mortgage, shall, at the option of Mortgagee, become due and payable forthwith or thereafter, as fully and completely as if all of the sums of money were originally stipulated to be paid on that day, anything in the Promissory Note, in this Mortgage or in any other Loan Document to the contrary notwithstanding; and thereafter, at the option of Mortgagee, without notice or demand, suit at law or in equity may be prosecuted as if all moneys secured by this Mortgage had matured prior to its institution. If the Mortgagor shall default at any time during the Loan Term, and if following such default, Mortgagee shall elect to accelerate the remaining indebtedness due under the Promissory Note, Mortgagee shall be entitled to collect the applicable Prepayment Penalty in any legal proceeding initiated by the Mortgagee to collect such indebtedness or enforce its other rights under the Loan Documents. Mortgagee shall be entitled to collect the applicable Prepayment Penalty regardless of whether Mortgagor's default was intentional, but if the court shall attach importance to the Mortgagor's motive in connection with application of the Prepayment Penalty, the parties stipulate, to the extent they are so permitted, that Mortgagor's default shall be deemed to be intentional under any circumstances.

15.     Mortgagor shall exhibit to Mortgagee written receipts establishing payment of any sums required to be paid under any mortgage or other lien obligation, no later than fifteen (15) days prior to the time that acceleration of any mortgage for delinquency of any other lien obligation could be declared for non-payment of it.   Without limiting the foregoing, Mortgagor will keep and maintain the Mortgaged Property free from all liens of persons supplying labor and materials entering into the construction, modification or repair of the Mortgaged Property and if any liens shall be filed against the Mortgaged Property, Mortgagor agrees to discharge the same of record within ten (10) days after the same shall have been filed.

16.     That it is the intent of this Mortgage to secure payment of the Promissory Note and any other obligations of Mortgagor to Mortgagee under this Mortgage, whether the entire amount shall have been advanced to Mortgagor, at the date of this Mortgage or at a later date, and to secure any other amount or amounts that may be added to the indebtedness secured by this Mortgage under the terms of this Mortgage.  The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed a principal sum equal to 200% of the original principal amount of the Promissory Note, plus interest on it and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property with interest on it; and this Mortgage shall secure any and all additional or further monies which may be advanced by Mortgagee to Mortgagor after the date of this Mortgage as if any additional or further advances were made on the date of

this Mortgage, whether or not any future advances of money are evidenced by a note or notes executed by Mortgagor to Mortgagee, but any and all future advances secured by this Mortgage shall be made not more than twenty (20) years after the date of this Mortgage. Mortgagor shall not file a notice pursuant to Section 697.04, Florida Statutes (or any successor to it), limiting the right of Mortgagee to make any additional or further advances with priority as specified in this Mortgage. Nothing contained in this Mortgage shall be deemed an obligation on the part of Mortgagee to make any future advances.

17.     That in the event the Mortgaged Property or any part of it shall be condemned or taken for public use under the power of eminent domain or shall be damaged or destroyed, Mortgagee shall have the right to demand that all damages awarded for the taking of or damage to the Mortgaged Property and all insurance proceeds shall be paid to Mortgagee, its successors or assigns, up to the amount then unpaid on this Mortgage and may be applied upon the payment or payments last payable under this Mortgage (and, if so applied, will not relieve Mortgagor of the obligation of paying subsequent payments when due). Mortgagor shall pay all reasonable legal fees (including both attorneys' and paralegals' fees at all tribunal levels and in connection with all proceedings, including post judgment proceedings), surveyor's charges and any other costs incurred by Mortgagee in connection with any condemnation proceeding or the full or partial destruction or damage to the Mortgaged Property which shall be due and payable upon demand of Mortgagee and any amounts shall be secured by this Mortgage together with interest from their due date until paid at the Default Rate. Mortgagor shall restore the Mortgaged Property to a complete and useable facility as expeditiously as possible after any casualty, regardless of whether or not the condemnation award or insurance proceeds are sufficient for restoration and regardless of the disposition of it.

18.     Mortgagor shall, within five (5) days from written demand by Mortgagee, execute and acknowledge, in form as shall be required by Mortgagee, any and all instruments reasonably requested by Mortgagee to effect, complete, perfect, preserve, continue or evidence the obligation of Mortgagor under the Promissory Note and the lien of this Mortgage including, without limitation, an estoppel certificate and waiver of defenses if there are none, duly acknowledged, setting forth the amount of principal and interest then outstanding on the Promissory Note and the general status of the Mortgage, and upon Mortgagor's failure, refusal or neglect to do so after written demand, Mortgagee shall have the right to execute any such documents in the name of Mortgagor. Furthermore, the failure of Mortgagor to make, acknowledge and deliver any instrument within the time aforesaid shall constitute a default and a breach of this Mortgage and shall entitle the holder of this Mortgage to declare all of the unpaid principal balance immediately due and payable.

19.     It is specifically agreed that time is of the essence of this instrument and that no waiver of any obligation under this Mortgage or of the obligation secured by this Mortgage shall at any time thereafter be held to be a waiver of the terms of this Mortgage or of the instrument secured by this Mortgage.

20.     If Mortgagor defaults in the performance of any of Mortgagor's covenants and agreements contained in this Mortgage, or any superior or inferior mortgage, Mortgagee shall have the right at any time, and without waiving or affecting its option to foreclose or any other rights under this Mortgage, to pay all sums of money or to render any performance as may be necessary or required to cure the default, and all sums paid shall be immediately due and payable from Mortgagor to Mortgagee together with interest on it at the Default Rate, and any and all costs, charges, attorneys' (including paralegals') fees (whether or not suit is instituted and in connection with all proceedings, including post-judgment proceedings), and other expenses incurred or expended in connection with the payment or performance, and this Mortgage shall stand as security for it, and any sums paid shall be deemed an indebtedness in addition to the indebtedness secured by this Mortgage.

21.     Whenever in this Mortgage one of the parties to it is named or referred to, the heirs, legal representatives, successors and assigns of that party shall be included provided that the foregoing shall not be deemed to constitute permission to transfer the Mortgaged Property which is otherwise restricted by paragraphs 23 and 24 of this Mortgage. All covenants and agreements contained in this Mortgage by or on behalf of Mortgagor or by or on behalf of Mortgagee shall bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns whether so expressed or not. Whenever the singular or plural number, or masculine or feminine or neuter gender is used in this Mortgage, it shall equally include the other.

22.     No right, power or remedy conferred upon or reserved to Mortgagee by this Mortgage is intended to be exclusive of any other right, power or remedy, but each and every right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given under this Mortgage or now or hereafter existing at law or in equity or by statute.

23.     Mortgagor shall not grant any other lien or mortgage on all or any part of the Mortgaged Property or any interest therein, nor make any further assignment of the leases and rentals of the Mortgaged Property, without the prior written consent of Mortgagee, which Mortgagor may grant or withhold in its sole discretion; any such unpermitted lien or mortgage or assignment by Mortgagor shall entitle Mortgagee to accelerate the maturity of the Loan and foreclose this Mortgage. Any such other lien or mortgage or assignment shall be junior to this Mortgage and to all permitted tenancies now or hereafter affecting the Mortgaged Property or any portion thereof and shall be subject to all renewals, extensions, modifications, releases, interest rate increases, future advances, changes or exchanges permitted by this Mortgage, all without the joinder or consent of such junior lienholder or mortgagee or assignee and without any obligation on Mortgagee's part to give notice of any kind thereto. Mortgagor shall maintain in good standing any other mortgage or encumbrance to secure debt affecting any part of the Mortgaged Property from time to time and shall not commit or permit or suffer to occur any default hereunder, nor shall Mortgagor accept any future advance under or modify the terms of any such mortgage or encumbrance which may then be superior to the lien of this Mortgage. Except for encumbrances permitted by Mortgagee, Mortgagor shall not

commit or permit or suffer to occur any act or omission whereby any of the security represented by this Mortgage shall be impaired or threatened, or whereby any of the Mortgaged Property or any interest therein shall become subject to any attachment, judgment, lien, charge or other encumbrance whatsoever, and Mortgagor shall promptly cause any such attachment, judgment, lien, charge or other encumbrance to be discharged or otherwise bonded or transferred to other security. Mortgagor shall not directly or indirectly do anything or take any action which might prejudice any of the right, title or interest of Mortgagee in or to any of the Mortgaged Property or impose or create any direct or indirect obligation or liability on the part of Mortgagee with respect to any of the Mortgaged Property.

24.     Mortgagor shall not cause or permit or suffer to occur any of the following events without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, and if any of the same shall occur without such consent, then Mortgagee shall have the right to accelerate the maturity of the Loan and foreclose this Mortgage: (a) if all or any portion of the legal or equitable title to all or any portion of the Mortgaged Property or any interest therein shall in any manner whatsoever be sold, conveyed or transferred, either voluntarily or by operation of law; (b) if Mortgagor shall enter into any lease or other arrangement with any third party regarding the use or possession by such third party of all or any portion of the Mortgaged Property (provided, however, Mortgagor shall be permitted, without Mortgagee's written consent, to enter into any lease with respect to the Mortgaged Property without Mortgagee's prior written consent if the lease is in the ordinary course of business at rentals reasonably equivalent to the market rate therefor), or any interest therein shall in any manner whatsoever be sold, conveyed or transferred, either voluntarily or by operation of law; (c) in the case of any portion of the Mortgaged Property owned by a corporation (or a partnership or joint venture or trust or other business entity), if any stock or partnership interest (including, without limitation, any transfer of stock in a corporate partner) or joint venture interest or beneficial interest in such owner shall be transferred in any manner, or if such stock or partnership interest or joint venture interest or beneficial interest shall be assigned, pledged, hypothecated, mortgaged or otherwise encumbered; or (d) if Mortgagor shall pay, repay or distribute any funds to any guarantor of the Loan or any other person directly or indirectly related to Mortgagor (such as a stockholder, partner or beneficiary) (provided, however, Mortgagor shall be permitted to make any such payments, repayments or distributions of funds to the extent that the same do not materially, adversely affect Mortgagor's ability to repay the Loan). For purposes of this paragraph, the following shall constitute a transfer by the Mortgagor and a default under this Mortgage and the Loan Documents: (a) if Mortgagor is a corporation, (i) the transfer of stock of Mortgagor or any stockholder of Mortgagor (whether such purported transfer shall be by direct transfer by such stockholder, the result of encumbrance of such stock by such stockholder or the result of action by any party against such stockholder), or (ii) the issuance of additional stock of Mortgagor after the date hereof; (b) if Mortgagor is a partnership or joint venture, (i) the transfer of any partnership or joint venture interest of any partner (general or limited) or joint venturer, (ii) if any new partners (limited or general) or joint venturers are admitted to Mortgagor; and (c) if Mortgagor is a limited liability company, (i) the transfer of any

13

membership interest of any member, or (ii) if any new members are admitted to Mortgagor.

25.    That if, from any circumstances whatever, fulfillment of any provision of this Mortgage, the Promissory Note or any other instrument securing or evidencing the loan secured by this Mortgage shall transcend the limit of validity prescribed by the usury statute or any other law of the State of Florida, then ipso facto the obligation to be fulfilled shall be reduced to the limit of the validity so that in no event shall any exaction, payment, reservation or charge be possible under this Mortgage, the Promissory Note or any other instrument that is in excess of the limit of the validity, but that obligation shall be fulfilled to the limit of the validity. In no event shall the Mortgagor be bound to pay for the use or detention of the money loaned and secured by this Mortgage, or the Mortgagee's forbearance in collecting same, interest, or payments in the nature of interest of more than the maximum rate lawfully collectible in accordance with the applicable laws of the State of Florida; the right to demand, charge or reserve any excess shall be and is waived. The provisions of this paragraph shall control every other provision of this Mortgage, the Promissory Note and any other undertaking, agreement or document evidencing, supporting or securing the loan secured by this Mortgage.

26.    This Mortgage is a "security agreement" and creates a "security interest" in favor of Mortgagee as a "secured party" with respect to all property included in the Mortgaged Property which is covered by the Uniform Commercial Code. Upon default under the Promissory Note, this Mortgage or any other Loan Document, Mortgagee may at its option pursue any and all rights and remedies available to a secured party with respect to any portion of the Mortgaged Property so covered by the Uniform Commercial Code, or Mortgagee may at its option proceed as to all or any part of the Mortgaged Property in accordance with Mortgagee's rights and remedies in respect of real property. Mortgagor and Mortgagee agree that the mention of any portion of the Mortgaged Property in a financing statement filed in the records normally pertaining to personal property shall never derogate from or impair in any way their declared intention that all items of collateral described in this Mortgage are part of the real estate encumbered hereby to the fullest extent permitted by law, regardless of whether any such item is physically attached to the improvements or whether serial numbers are used for the better identification of certain items of equipment. Specifically, the mention in any such financing statement of (a) the rights in or the proceeds of any insurance policy, (b) any award in eminent domain proceedings for a taking or for loss of value, (c) Mortgagor's interest as lessor in any present or future lease or right to income growing out of the use or occupancy of the Mortgaged Property or improvements thereto, whether pursuant to lease or otherwise, or (d) any other item included in the definition of the Mortgaged Property, shall never be construed to alter any of the rights of Mortgagee as determined by this Mortgage or to impugn the priority of Mortgagee's lien and security interest with respect to the Mortgaged Property; such mention in a financing statement is declared to be for the protection of Mortgagee in the event any court shall hold that notice of Mortgagee's priority of interest with respect to any such portion of the Mortgaged Property must be filed in the Uniform Commercial Code records in order to be effective against or take priority over any particular class of persons, including but not limited to the federal

14

government and any subdivision or instrumentality of the federal government. This Mortgage or a carbon, photographic copy or other reproduction hereof or of any financing statement shall be sufficient as a financing statement.

27.   Mortgagor consents and agrees that, at any time and from time to time, without notice, (a) Mortgagee and the owner(s) of any collateral then securing the Loan may agree to release, increase, change, substitute or exchange all or any part of such collateral, and (b) Mortgagee and any person(s) then primarily liable for the Loan may agree to renew, extend or compromise the Loan in whole or in part or to modify the terms of the Loan in any respect whatsoever. Mortgagor agrees that no such release, increase, change, substitution, exchange, renewal, extension, compromise or modification, no sale of the Mortgaged Property or any part thereof, no forbearance on the part of Mortgagee, nor any other indulgence given by Mortgagee (whether with or without consideration) shall relieve or diminish in any manner the liability of any Obligor, nor adversely affect the priority of this Mortgage, nor limit or prejudice or impair any right or remedy of Mortgagee. All Obligors and all those claiming by, through or under any of them hereby jointly and severally waive any and all right to prior notice of, and any and all defenses or claims based upon, any such release, increase, change, substitution, exchange, renewal, extension, compromise, modification, sale, forbearance or indulgence.

28.   Mortgagee and any persons authorized by Mortgagee shall have the right, from time to time at the discretion of Mortgagee and upon prior written notice, to enter and inspect the Mortgaged Property. At any time after default under the terms of the Promissory Note, this Mortgage or any other Loan Document, if any of the buildings, improvements or equipment now or hereafter located on or in the Mortgaged Property shall be unprotected or unguarded, or if any improved portion of the Mortgaged Property shall be allowed to remain vacant or deserted, then, at its option, Mortgagee may employ watchmen for the Mortgaged Property and expend any monies deemed reasonably necessary by Mortgagee to protect the Mortgaged Property and the buildings, improvements and equipment thereon from waste, vandalism and other hazards, depredation or injury, and any sums expended by Mortgagee for such purpose shall bear interest, shall be paid and shall be secured as provided in paragraph 2 hereinabove.

29.   Mortgagor agrees that the management of the Mortgaged Property shall be conducted at all times by Mortgagor, or by such other professional property management organization as Mortgagee shall approve in writing, which Mortgagee may grant or withhold in its sole discretion. At any time after default under the Promissory Note, this Mortgage or any other Loan Documents, if Mortgagee shall determine in its sole discretion that the management or maintenance of the Mortgaged Property is unsatisfactory, then Mortgagor shall employ as managing agent of the Mortgaged Property such person(s) as Mortgagee may designate from time to time, at Mortgagor's sole expense and for the duration of the default. Any sums advanced by Mortgagee in connection with such managing agent shall bear interest, shall be paid and shall be secured as provided in paragraph 2 hereinabove.

15

30.     In order to induce Mortgagee to make the Loan, Mortgagor represents and warrants that: (a) except as previously or concurrently disclosed in writing to Mortgagee, there are no actions, suits or proceedings pending or threatened against or affecting any Obligor or any portion of the Mortgaged Property, or involving the validity or enforceability of this Mortgage or the priority of its lien, before any court of law or equity or any tribunal, administrative board or governmental authority; (b) the execution and delivery of the Promissory Note, this Mortgage and all other Loan Documents do not and shall not (i) violate any provisions of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to any Obligor, nor (ii) result in a breach of, or constitute a default under, any indenture, bond, mortgage, lease, instrument, credit agreement, undertaking, contract or other agreement to which any Obligor is a party or by which any of them or their respective properties may be bound or affected; (c) the Promissory Note, this Mortgage and all other Loan Documents constitute valid and binding obligations of the Obligor(s) executing the same, enforceable against such Obligor(s) in accordance with their respective terms; (d) all financial statements of the Obligors previously delivered to Mortgagee have been prepared in accordance with commercially reasonable accounting principles consistently applied and fairly present the correct respective financial conditions of the Obligors as of their respective dates, and the foregoing shall be true with respect to all financial statements of the Obligors delivered to Mortgagee hereafter; (e) to the extent set forth in Section 10(o) of the Loan Agreement, there is no fact that the Obligors have not disclosed to Mortgagee in writing that could materially adversely affect their respective properties, business or financial conditions or the Mortgaged Property or any other collateral for the Loan; (f) the Obligors have duly obtained or will obtain permits, licenses, approvals and consents from, and made all filings with, any governmental authority (and the same have not lapsed nor been rescinded or revoked) which are necessary in connection with the execution or delivery or enforcement of this Mortgage or any other Loan Document or the performance of any Obligor's obligations thereunder; (g) the proceeds of the Loan are not being used to purchase or carry any "margin stock" within the meaning of Regulation "U" of the Board of Governors of the Federal Reserve System, nor to extend credit to others for that purpose; and (h) each extension of credit secured by this Mortgage is exempt from the provisions of the Federal Consumers Credit Protection Act (Truth-In-Lending Act) and Regulation "Z" of the Board of Governors of the Federal Reserve System, because Mortgagor is a person fully excluded therefrom, and/or because said extension of credit is only for business or commercial purposes of Mortgagor and is not being used for personal, family, household or agricultural purposes.   Mortgagor acknowledges and agrees that Mortgagee is relying on the representations and warranties in this Mortgage and all other Loan Documents as a precondition to making the Loan, and that all such representations and warranties shall survive the closing of the Loan and any bankruptcy proceedings.

31.     If Mortgagor is a corporation, partnership or other business entity, then Mortgagor hereby represents and warrants, in order to induce Mortgagee to make the Loan, that: (a) Mortgagor is duly organized, validly existing and in good standing under the laws of the jurisdiction of its creation and the state of Florida; (b) Mortgagor has all requisite power and authority (corporate or otherwise) to conduct its business, to own its

16

properties, to execute and deliver the Promissory Note and this Mortgage and all other Loan Documents, and to perform its obligation under the same; (c) the execution, delivery and performance of the Promissory Note, this Mortgage and all other Loan Documents have been duly authorized by all necessary actions (corporate or otherwise) and do not require the consent or approval of Mortgagor's stockholders (if a corporation) or of any other person or entity whose consent has not been obtained; and (d) the execution, delivery and performance of the Promissory Note, this Mortgage and all other Loan Documents do not and shall not conflict with any provision of Mortgagor's by-laws or articles of incorporation (if a corporation), partnership agreement (if a partnership) or trust agreement or other document pursuant to which Mortgagor was created and exists.

32.    Mortgagor and Mortgagee intend that all of the provisions of this Mortgage shall be valid and enforceable as specifically set forth. Any judicial determination that any provision of this Mortgage shall not be valid or enforceable as specifically set forth shall not result in that provision being declared invalid but same shall be deemed modified in a manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. As to any portion that is actually determined by a competent court having jurisdiction to be invalid, it is the intention of the Mortgagor and the Mortgagee that the remainder of the document or (if applicable) clause, paragraph, or article shall be enforced as written and the declaration of invalidity shall apply only to the clause, paragraph or article in question.

33.    (a)    Mortgagor represents that, to Mortgagor's actual knowledge, neither Mortgagor nor any other person or entity has ever generated, used or disposed of any Hazardous Substance (as defined below) from or in connection with the Mortgaged Property or used the Mortgaged Property as a storage facility for any Hazardous Substance.

(b)    Mortgagor agrees to indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable attorneys' and paralegals' fees, costs of any settlement or judgment and claims of any and every kind whatsoever paid incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence, usage, storage, generation or disposal on or under or in connection with the Mortgaged Property, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from the Mortgaged Property, of any Hazardous Substance (including, without limitation, any losses, liabilities, including strict liability, damages, injuries, expenses, including attorneys' and paralegals' fees, costs of any settlement or judgment or claims asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, under any so called Federal, state or local "superfund" or "superlien" law, or under any statute, law, ordinance, code, rule, regulation, order or decree regulating, with respect to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance), regardless of whether or not within the control of Mortgagee.

17

(c)      For purposes of this paragraph 33, "Hazardous Substance" shall mean and include those elements or compounds which are from time to time contained in the list of hazardous substances adopted by the United States Environmental Protection Agency ("EPA") and the list of toxic pollutants designated by Congress or the EPA or defined by any other Federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic or dangerous waste, substance or material as now or at any time hereafter in effect.

(d)      If Mortgagor receives any notice of: (i) the happening of any event involving the spill, release, leak, seepage, discharge or cleanup of any Hazardous Substance on or in connection with the Mortgaged Property or in connection with operations on it; or, (ii) any complaint, order, citation or notice with regard to air emissions, water discharges, or any other environmental, health or safety matter affecting or related to the Mortgaged Property (an "Environmental Complaint") from any person or entity (including without limitation the EPA), then Mortgagor shall promptly notify Mortgagee orally and in writing of that notice.

(e)      Mortgagee shall have the right but not the obligation, and without limitation of Mortgagee's rights under this Mortgage, to enter onto the Mortgaged Property or to take any actions as Mortgagee deems reasonably necessary or advisable to cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Substance or Environmental Complaint following receipt of any notice from any person or entity (including without limitation the EPA) asserting the existence of any Hazardous Substance or any Environmental Complaint pertaining to the Mortgaged Property or any part of it which, if true, could result in an order, suit or other action against Mortgagor and/or which, in the absolute,sole and good faith opinion of Mortgagee, could jeopardize Mortgagee's security under this Mortgage. All reasonable costs and expenses incurred by Mortgagee in the exercise of any rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand.

(f)      Mortgagee shall have the right, in its reasonable discretion and as facts and circumstances warrant, to require Mortgagor to periodically (but not more frequently than annually unless an Environmental Complaint is then outstanding) perform (at Mortgagor's expense) an environmental audit and, if deemed necessary by Mortgagee, an environmental risk assessment, each of which must be reasonably satisfactory to Mortgagee, of the Mortgaged Property, of hazardous waste management practices and/or hazardous waste disposal sites used in connection with operations conducted at the Mortgaged Property. The audit and/or risk assessment must be by an environmental consultant reasonably satisfactory to Mortgagee. Should Mortgagor fail to perform the environmental audit and/or risk assessment within thirty (30) days of Mortgagee's written request, Mortgagee shall have the right but not the obligation to retain an environmental consultant to perform the environmental audit and/or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of those rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand or charged to Mortgagor's loan balance at the discretion of Mortgagee.

18

(g)    Any breach of any warranty, representation or agreement contained in this paragraph 33 shall be an event of default under this Mortgage and shall entitle Mortgagee to exercise any and all remedies provided in this Mortgage or otherwise permitted by law. The provisions of this paragraph 33 shall survive satisfaction, release or foreclosure of this Mortgage.

34.    Mortgagor shall pay to Mortgagee on the day monthly payments are due under the Promissory Note pursuant to which Mortgagor, as Maker, makes monthly payments to Mortgagee, as Payee, until the Promissory Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Mortgage as a lien on the Mortgaged Property; (b) yearly hazard or property insurance premiums; and (c) yearly flood insurance premiums, if any (collectively, the "Escrow Items"). Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Mortgagee shall apply the Funds to pay the Escrow Items. The Funds shall not be, nor deemed to be trust funds, but may be commingled with the general funds of Mortgagee, and no interest shall be payable in respect thereof. The Funds are pledged as additional security for all sums secured by this Mortgage. In the event of default under the terms, covenants and conditions in the Promissory Note, this Mortgage or any of the Loan Documents, Mortgagee may apply to the reduction of sums secured hereby, in such manner as Mortgagee shall determine, any amount under this paragraph remaining to Mortgagor's credit and any return premium received from cancellation of any insurance policy by Mortgagee upon foreclosure of this Mortgage.

If the amount of the Funds held by Mortgagee at any time is not sufficient to pay the Escrow Items when due, Mortgagee may so notify Mortgagor in writing, and, in such case, Mortgagor shall pay to Mortgagee the amount necessary to make up the deficiency. Upon payment in full of all sums secured by this Mortgage, Mortgagee shall promptly refund to Mortgagor any Funds held by Mortgagee.

**Notwithstanding anything to the contrary herein, Mortgagee has agreed to waive the foregoing provisions of this Paragraph; provided, however, that in the event and continuance of default by Mortgagor, Mortgagee shall have the right to reinstate and enforce said provisions.**

35.    Mortgagor will, at such times during normal business hours as Mortgagee may reasonably request, permit Mortgagee, by its agents, accountants and attorneys, upon reasonable written notice, to visit and inspect the Mortgaged Property and/or Mortgagor's principal place of business and examine such records and books of account and to discuss its affairs, finances, and accounts with Mortgagor. During the term of the Note, Mortgagor shall furnish to Mortgagee annually, within ninety (90) days after the close of each fiscal year of Mortgagor, all of the following: (i) statements relating to the

Mortgaged Property, showing, among other things, all items of income and expense relative to the Mortgaged Property; and (ii) complete financial statements concerning Mortgagor, including information respecting the assets and liabilities of Mortgagor and a profit and loss statement for Mortgagor. Each of such statements shall be prepared in a form reasonably satisfactory to Mortgagee and shall be certified to be true and correct by Mortgagor. Mortgagee, in its sole discretion, may request that the financial statements be complied by a Certified Public Accountant. If Mortgagor's fiscal year is not the calendar year, Mortgagor shall advise Mortgagee in writing as to the commencement date of Mortgagor's fiscal year. Within forty-five (45) days after filing with the Internal Revenue Service, Mortgagor shall annually furnish Mortgagee with a copy of Mortgagor's income tax return.

36.    THE UNDERSIGNED WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS TRANSACTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE UNDERSIGNED AND THE UNDERSIGNED ACKNOWLEDGE THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY THE UNDERSIGNED'S OWN FREE WILL, AND THAT THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

37.    This Mortgage, the Promissory Note and the Loan shall be cross-collateralized and cross-defaulted with any other mortgages and promissory notes now or hereafter executed by Mortgagor in favor of Mortgagee, its successors and/or assigns.

[Signature Page to Follow]

IN WITNESS WHEREOF, Mortgagor has executed these presents on the day and year first above written.

**WITNESSES:**

**MORTGAGOR:**

7233 Los Pinos, LLC, a Florida limited liability company

Witness Name: Nicole Cuellar

By: Kapoor LLC, a Florida limited liability Company, its sole member

Witness Name: Nicolas Romero

By: _____
Rishi Kapoor, Manager

STATE OF **Florida**          )
                                   ) ss:
COUNTY OF **Miami-Dade** )

I HEREBY CERTIFY THAT the foregoing instrument was acknowledged before me by means of [  ] physical presence or [  ] online notarization, this _3_ day of **March, 2023** by **Rishi Kapoor, as Manager of  Kapoor LLC, a Florida limited liability company, as Sole Member of 7233 Los Pinos, LLC, a Florida limited liability company,** who is personally known to me or who produced _____ as identification.

My commission expires:

Nicole Cuellar
Comm.: HH 354537
Expires: January 26, 2027
Notary Public - State of Florida

_____
NOTARY PUBLIC

21