IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
IN ADMIRALTY

CASE NO.: 9:23-CV-81411-DMM

UNIBANK FOR SAVINGS
a Massachusetts for Profit Corporation,

       Plaintiff,

v.

M/Y SUNEETA II, and her engines, machinery,
tackle, apparel, boats, furniture, equipment, rigging,
and all other necessary appurtenances, etc., *in rem,*
RISHI KUMAR KAPOOR*, in personam, a*nd
JENNIE ELIZABETH FRANK KAPOOR, *in personam,*

       Defendant(s).

_____/

### **DEFENDANTS RISHI KUMAR KAPOOR AND JENNIE ELIZABETH FRANK KAPOOR'S MOTION TO VACATE ARREST AND MEMORANDUM OF LAW**

Defendants, RISHI KUMAR KAPOOR and JENNIE ELIZABETH FRANK KAPOOR,

individually, and as owners of the Defendant Vessel, M/Y SUNEETA II - one 2023 68.60' Princess

Yachts Limited "PRINCESS 72" motor yacht bearing Hull Identification Number VSC72041B323

and Official Number 1334793, and its tenders, engines, generators, tackle, and appurtenances, by

and through undersigned counsel and pursuant to Supplemental Admiralty Rule E(4)(f) and Local

Admiralty Rule C(6)(7), hereby file this Motion to Vacate Arrest and Supporting Memorandum of

Law, and in support thereof state as follows:

1

## PROCEDURAL BACKGROUND

1.      On October 20, 2023, Plaintiff, UNIBANK FOR SAVINGS ("UNIBANK") filed its Verified Complaint [ECF No. 1]. The initial pleading contains a cause of action *in rem* against the Defendant Vessel and a cause of action *in personam* against RISHI KUMAR KAPOOR and JENNIE ELIZABETH FRANK KAPOOR (collectively, "KAPOOR").

2.      The Complaint [ECF No.1] outlines the banking relationship between UNIBANK and the KAPOORS during the acquisition, registration, and finance/loan of the subject vessel. The initial pleading further summarizes the relationship between the parties and attaches the applicable Promissory Note and a First Preferred Ship's Mortgage.

3.      The KAPOORS have timely made all payments under the Note, but allegedly, the default is a technical nonmonetary "breach" of the First Preferred Ship's Mortgage.

4.      UNIBANK alleges that the KAPOORS made "false" and "misleading" statements on the initial loan application.

5.      Further, UNIBANK alleges that the KAPOORS' ability to pay the Ship's Mortgage has become "endangered" because RISHI KAPOOR has been named as a party defendant in subsequently filed lawsuits, and consequently, UNIBANK deems itself insecure.

6.      UNIBANK contemporaneously filed a Motion for Issuance of Order Directing the Clerk of Court to issue a Warrant of Arrest *in rem* and For Emergency Consideration, along with a Certificate of Exigent Circumstances [ECF No.7].

7.      On October 24, 2023, an Order directing the Clerk of Court to issue a warrant of arrest against the Vessel [ECF No. 11] was issued and was executed on October 31, 2023.

8.      As set forth in the Order [ECF No. 11], "any party seeking to challenge this Order may do so pursuant to Supplemental Admiralty and Maritime Claims Rule E(4)(f) and Local Admiralty Rule C(7)."

9.      On or about 14 November 2023, Defendants timely filed their Verified Statement of Right or Interest, as well as this Request for an Order to Show Cause hearing, pursuant to Supplemental Rule C(6)(a)(i) and Local Admiralty Rule C(6)(a).

10.     As set forth in this Motion, Defendants respectfully move this Court to enter an order requiring UNIBANK to show cause (1) why the arrest of the Vessel should not be vacated, (2) why exigent circumstances existed requiring the issuance of the Warrant of Arrest *in rem*, and (3) why the Court should not award attorney's fees, costs, and expenses incurred by Defendants owing to the wrongful arrest of the Vessel.

11.     Defendants assert three (3) fundamental arguments in support of their contention that the arrest of the Vessel was wrongful and without reasonable grounds.

12.     First and foremost, Defendants assert that "exigent circumstances" did not exist, and the Warrant of Arrest *in rem* must be vacated because UNIBANK has failed to establish that "exigent circumstances" actually existed.

13.     Second, Defendants assert that there were no "false" or "misleading" statements in the loan application submitted to UNIBANK (to begin its due diligence inquiry).

14.     Finally, Defendants assert and will demonstrate at the evidentiary hearing that 1) Defendants had timely made all payments required by the Promissory Note, 2) the Vessel was adequately insured, and 3) UNIBANK's claim of a technical, nonmonetary "breach" of the First Preferred Ship's Mortgage is not supported by the facts and the wrongful ambush/arrest of the Vessel was not reasonable and completed in bad faith.

3

## MEMORANDUM OF LAW

## THE WARRANT OF ARREST IN REM MUST BE VACATED FOR A LACK OF EXIGENT CIRCUMSTANCES.

In accordance with the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and the Local Admiralty and Maritime Rules in and for the Southern District of Florida, a Warrant of Arrest *In Rem* must be vacated if a Plaintiff fails to establish that exigent circumstances actually existed. *See Nimbus Boat Rental, Corp. v. Garcel*, 1:22-cv-22645-KMM (S.D. Fla. Oct. 7, 2022); *Ms. Adele Schifffahrtsgesellschaft mbH & Co. KG v. Wonderland Int'l Corp.,* No. 10-20963-CIV, 2010 WL 8932403 (S.D. Fla. Apr. 12, 2010).

## LOCAL RULE C. ACTION IN REM

**C(7) Post-arrest Proceedings**. Coincident with the filing of a claim pursuant to Supplemental Rule E(4)(f), and Local Admiralty Rule C(6)(a), the claimant may also file and serve a motion and proposed order directing plaintiff to show cause why the arrest should not be vacated. If the Court grants the order, the Court shall set a date and time for a show cause hearing. Thereafter, if the Court orders the arrest to be vacated, the Court shall award attorney's fees, costs, and other expenses incurred by any party as a result of the arrest. Fed. R. Civ. P. Supp. R. E(4)(f); S.D. Fla. Local Admiralty Rule C(6)(a).

Additionally, if the seizure was predicated upon a showing of "exigent circumstances" under Local Admiralty Rule C(2)(b), and the Court finds that such exigent circumstances did not exist, the Court shall award attorneys' fees, costs and other expenses incurred by any party as a result of the seizure. S.D. Fla. Local Admiralty Rule C(2)(b).

When a warrant of arrest is issued under Supplemental Rule C(3)(a)(ii), "[t]he plaintiff has the burden in any post-arrest hearing under Rule E(4)(f) to show that exigent circumstances existed." Fed. R. Civ. P. Supp. R. C(3)(a)(ii); *see also* S.D. Fla. Local Admiralty Rule C(7).

The Advisory Committee Notes further explains:

When "exigent circumstances" exist, the rule enables the plaintiff to secure the issuance of the summons and warrant of arrest, subject to a later showing that the necessary circumstances actually existed. This provision is intended to provide a safety valve without undermining the requirement of pre-arrest scrutiny. Thus, *every effort to secure judicial review, including conducting a hearing by telephone, should be pursued before invoking the exigent circumstances procedure*.

4

Fed. R. Civ. P. Supp. R. C(3) Advisory Committee Notes to 1985 Amendment (emphasis added).

In the case at bar, UNIBANK filed its Motion for Issuance of Order Directing The Clerk of Court To Issue A Warrant Of Arrest In Rem and For Emergency Consideration (ECF No. 7).

As set forth in Motion, UNIBANK requested the "Emergency Issuance of Process" and contemporaneously filed its Certificate of Exigent Circumstances. (ECF No. 7).

In support of its request, UNIBANK admits that the Vessel was physically located within the District, but added the following language to seemingly justify its emergency request and showing of exigent circumstances: **"but it is anticipated the Defendants may hide or remove the Vessel from the District and, quite possibly, the jurisdiction of the United States."**

Relying on UNIBANK's certification of exigent circumstances and request for emergency issuance of process, this Court instructed the Clerk of Court to issue the Warrant of Arrest *In Rem*.

However, it is unmistakable that exigent circumstances did not exist at the time the warrant was requested.

UNIBANK's insinuation that the KAPOORS "may hide or remove the vessel from the District and quite possibly, the jurisdiction of the United States" is completely baseless and has no factual basis. A simple inquiry or investigation by the UNIBANK would have easily revealed that the Vessel had been docked at the marina in Palm Beach for three (3) weeks, undergoing warranty repairs and service by the local Princess USA dealer. Indeed, the KAPOORS have reserved a slip at the marina until the end of November 2023. The evidence and testimony will show that the Vessel had been sitting in the marina receiving warranty work for three (3) weeks and was scheduled to remain at the dock for another month, hardly exigent circumstances.

As a further scare tactic, UNIBANK also suggests that the KAPOORS might remove the Vessel from the jurisdiction of the United States, and, seemingly, never return, depriving the UNIBANK of its collateral.

Interestingly, the KAPOORS did take the Vessel out of the territorial waters of the United States on several occasions (family vacation trips to the Bahamas) but returned home to the United States after each and every voyage. If the KAPOORS had wanted to "run away" with Vessel, they had ample opportunity to do so, and the fact that the KAPOORS returned home each time negates any bad faith suggestion that the KAPOORS were a "flight risk."

Again, if UNIBANK simply contacted the KAPOORS or conducted a simple inquiry or investigation, UNIBANK would have learned that the Vessel had just returned from a vacation trip in the Bahamas and was sitting at a dock for nearly a month before UNIBANK instituted this action in federal court. Simply put, there were no exigent circumstances.

UNIBANK's emergency request for the warrant of arrest and claim of exigent circumstances has no legal or factual basis, and smacks of bad faith. Indeed, the underlying foreclosure action (based on nonmonetary technical defaults) is wrongful and further demonstrates a common theme throughout this Motion: UNIBANK's bad faith.

In an attempt to soften the impact of its emergency request, UNIBANK contends that: **"Plaintiff has made repeated demands upon the owners/Defendants, RISHI KUMAR KAPOOR and JENNIE ELIZABETH FRANK KAPOOR, who are well aware of Plaintiff's claims and intentions, and it is highly likely the Vessel will leave the jurisdiction."**

KAPOOR responds that there is nothing further from the truth, and the evidence will show that UNIBANK did not contact or communicate with the KAPOORS about the Vessel or any concerns, default, or alleged insecurity.

It is crucial for this Court to understand that the KAPOORS had no knowledge of any claim or intentions that their Vessel would be arrested/seized and taken from them by UNIBANK. The KAPOOR family was in "total shock" of being forced off their Vessel as they were celebrating the Halloween holiday as a family.

At no time did UNIBANK contact the KAPOORS to discuss a 'breach" of the Note or First Preferred Ship's Mortgage.

At no time did UNIBANK provide any notice or opportunity to cure the supposed technical, nonmonetary "breach."

At no time did UNIBANK contact the KAPOORS to discuss any "insecurity" that the UNIBANK was purportedly feeling.

Although UNIBANK was contractually permitted to request and review the KAPOORS' year-end financial records and/or a copy of the Vessel's registration documents, UNIBANK never asked for any follow-up records, financial or otherwise.

Although permitted to inspect the Vessel, UNIBANK never contacted the KAPOORS to inspect the Vessel or to simply inquire as to its whereabouts.

The emergency request for the warrant (and plea of exigent circumstances) is nothing more than a ruse and cover-up for the heavy-handed and unconscionable arrest of the Vessel.

There was no need to arrest the Vessel in such a harsh and expedited manner. The KAPOORS had made timely payment of all installments and maintained insurance on the Vessel.

At any time, UNIBANK could have simply picked up the phone to call the KAPOORS to discuss the Vessel's status, the Vessel's location, or any other "insecurity" concerns that UNIBANK purportedly had.

UNIBANK could have made a good faith attempt to call, email, or text message KAPOOR, but no such courtesy was exercised. UNIBANK unilaterally deemed itself "insecure," secretly filed its lawsuit, and then surreptitiously moved to arrest the Vessel.

Contrary to the Plaintiff's assertions in the emergency motion, the KAPOORS had **NO** knowledge or notice of any claims, concerns, or potential technical nonmonetary defaults.

This honorable Court is once again reminded that KAPOOR had made each and every payment as required by the Note and First Preferred Ship's Mortgage, and unaware of any breach.

The arrest was predicated on a tenuous argument of "insecurity" by a lender who seemingly engaged in numerous telephone calls and email exchanges with its prospective borrower before lending millions of dollars to purchase a yacht, but apparently, UNIBANK could not find any time to call or communicate its feelings of "insecurity." Rather than make a good-faith attempt to call or communicate any concerns regarding a technical nonmonetary default, UNIBANK chose to "ambush" the KAPOORS and arrest the Vessel without warning or notice.

Based on the foregoing, exigent circumstances did not actually exist at the time of the arrest. Accordingly, the emergency request for the issuance of the warrant, as well as the certification of exigent circumstances, was improper, and the KAPOORS respectfully move this Court to vacate the order arresting the Vessel on this ground alone.

## WRONGFUL ARREST - STANDARD OF REVIEW

Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure governs actions *in rem* and *quasi in rem*. Specifically, Rule E(4)(f) provides in pertinent part:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules. Fed. R. Civ. P. Supp. R. E(4)(f).

The commentary to Rule E makes it clear that a plaintiff has the burden of proof:

> Rule E(4)(f) is triggered by the defendant or any other person with an interest in the property seized. Upon an oral or written application similar to that used in seeking a temporary restraining order, see Rule 65(b), the court is required to hold a hearing as promptly as possible to determine whether to allow the arrest or attachment to stand. The plaintiff has the burden of showing why the seizure should not be vacated. The hearing also may determine the amount of security to be granted or the propriety of imposing counter-security to protect the defendant from an improper seizure. *See* Fed. R. Civ. P. Supp. R. E(4)(f).

The rationale outlined in the commentary to Rule E(4)(f) is supported in the jurisprudence. A defendant whose property has been seized is entitled to a hearing as promptly as possible to determine whether to allow the arrest to stand, and the burden of proof rests on the plaintiff to show why such seizure should not be vacated. *Seacarriers Enterprises, Ltd. v. Tugboat "LADY MICHELE," et al., W.L. 28073* (E.D. La. 1992).

A vessel owner is "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest … should not be vacated or other relief granted consistent with these rules." Supp. R. E(4)(f).

Local Admiralty Rule C(7) provides in part:

> Post-arrest Proceedings. Coincident with the filing of a claim pursuant to Supplemental Rule E(4)(f), and Local Admiralty Rule C(6)(a), the claimant may also file a motion and proposed order directing plaintiff to show cause why the arrest should not be vacated. If the Court grants the order, the Court shall set a date and time for a show cause hearing.

The advisory notes to Local Admiralty Rule C (7) establish that the purpose of the show cause hearing is so that the plaintiff "can be required to establish a prima facie case that he is asserting a claim which is entitled to the dignity and status of a maritime lien against the arrested property." *See* Advisory, Notes to Local Admiralty Rules C(7) and C(2), Local Rules for the United States District Court, Southern District of Florida.

The purpose of the Rule E(4)(f) hearing is to "afford due process to a shipowner whose vessel has been arrested without the benefit of a post-arrest hearing." *S & S Diesel Marine Servs. v. M/V F-Troop*, 2011 U.S. Dist. LEXIS 53808, 23-27 (S.D. Fla. May 18, 2011); *Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 1999 U.S. Dist. LEXIS 22501, at *2 (M.D. Fla. Nov. 17, 1999) (citing *Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 910-12 (4th Cir. 1981)).

During the Rule E(4)(f) hearing, the plaintiff must shoulder the burden of showing why the arrest should not be vacated. *Automarine, S.A. v. Asociacion Nacional De Agencias Distribuidoras De Vehiculos, Inc.*, 2004 U.S. Dist. LEXIS 26670 at *1 (S.D. Fla. Aug. 4, 2004); *Linea Naviera De Cabotaje*, 1999 U.S. Dist. LEXIS 22501 at *2.

To this end, UNIBANK must prove "reasonable grounds" to support the Vessel's arrest. *George v. A 2005 DONZI Motor Yacht*, 2009 U.S. Dist. LEXIS 102186 at *3 (S.D. Fla. Oct. 22, 2009) (quoting *20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997)); *Linea Naviera De Cabotaje*, 1999 U.S. Dist. LEXIS 22501 at *2; *Danmar Lines, Ltd. v. Peticure, LLC*, 2009 U.S. Dist. LEXIS 60700 at * 2 (N.D. Tex. July 15, 2009).

At the Rule  E(4)(f)  hearing, a plaintiff has the burden of demonstrating that there were reasonable grounds for the arrest. That is, a plaintiff must "come forward with sufficient evidence to show there was probable cause for the arrest or attachment of the vessel," *20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.,* 992 F.Supp. 1423, 1427 (M.D. Fla.1997).

The plaintiff's burden has also been described as requiring that a plaintiff establish a prima facie claim. *See, e.g., Chiquita Int'l Ltd. v. MV Bosse,* 518 F.Supp.2d 589, 597 (S.D. N.Y.2007).

In determining whether a plaintiff has satisfied its burden of showing entitlement to a valid maritime lien, a court may consider evidence at the post-arrest hearing that was not before it at the

time of the original attachment in order to determine whether reasonable grounds existed for the arrest of the vessel. *Linea Naviera De Cabotaje*, 1999 U.S. Dist. LEXIS 22501 at *2. This circumstance stems from the fact that the court's role at the time of pre-judgment arrest involves quickly determining whether probable cause exists for the attachment. *Id*. at *4. At pre-judgment arrest, a plaintiff need only produce enough evidence to convince the court that reasonable grounds exist to "stop the ship." *Id*. In contrast, at a post-arrest hearing, both parties can present additional evidence, including testimony and affidavits, allowing the court to review a more complete record in order to decide whether the arrest should continue or be vacated. *Id*.

Supplemental Rule E does not restrict a court's review to the adequacy of the allegations in the complaint. Under Rule E(4)(f), a court may also consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing.

In the instant matter, Plaintiff UNIBANK is required to meet its burden of proof and demonstrate why the arrest of the Vessel should not be vacated. Defendants submit that UNIBANK is not able to carry its burden and that the wrongful arrest should be vacated because UNIBANKS's arrest was not based on "reasonable grounds" and lacked good faith and reasonableness.

## <u>UNIBANK HAS NOT PROVIDED EVIDENCE IT HAS A RIGHT OF FORECLOSURE AND IS UNABLE TO ESTABLISH GOOD FAITH AND REASONABLE GROUNDS</u>

It is well-established that a District Court has maritime jurisdiction over a plaintiff's action to foreclose the preferred mortgage on the vessel. The Ship's Mortgage Act allows a mortgagee to bring a cause of action *in rem* for the foreclosure of a preferred ship's mortgage and gives federal district courts exclusive original jurisdiction to hear that cause of action. 46 U.S.C. § 31325(b)(1), (c) (West Supp.1999); *Beluga Holding, Ltd. v. Commerce Capital Corp.*, 212 F.3d 1199, 1202 (C.A.11 (Fla.), 2000).

11

Firmly established in legal doctrine, courts of equity may refuse to foreclose a mortgage when an acceleration of the due date would render the acceleration unconscionable, and the result would be inequitable and unjust. *Delgado v. Strong*, 360 So. 2d 73, 75 (Fla. 1978); *Clark v. Lachenmeier*, 237 So.2d 583 (Fla. 2d DCA 1970); *Campbell v. Werner*, 232 So.2d 252 (Fla. 3d DCA 1970); *Schechtman v. Grobbel*, 226 So.2d 1 (Fla. 2d DCA 1969).

Consistent with this principle, Florida courts have denied foreclosure of a mortgage where a breach of the mortgage was merely a technical one, and such breach did not place the security in jeopardy. *Id.* Numerous cases including *Cohen v. Mohawk, Inc.*, 137 So.2d 222 (Fla. 1962); *Williams v. Williams*, 85 So.2d 225 (Fla. 1955); *Staton v. Staton*, 231 So.2d 531 (Fla. 1st DCA 1970); *American Fidelity Fire Insurance Co. v. Clark*, 174 So.2d 106 (Fla. 3d DCA 1965), have applied this principle in determining and have found in favor of the petitioners. *Id.* Acceleration clauses are designed to protect the creditor from actions by the debtor that jeopardize or impair the creditor's security. They are not to be used offensively, e.g. for the commercial advantage of the creditor." *In re Prime Motor Inns, Inc.*, 131 B.R. 233, 236 (Bankr. S.D. Fla. 1991).

Various courts have held that while acceleration clauses are common and are often enforced according to their terms, equity may bar acceleration and subsequent foreclosure in certain circumstances because of the harsh nature of such actions. *Neuro-Rehab Assocs., Inc. v. AMRESCO Com. Fin., L.L.C.*, No. CIVA 05-12338-GAO, 2006 WL 1704258, at *4 (D. Mass. June 19, 2006).

Acceleration and foreclosure have been barred as inequitable in circumstances where the default relied upon to accelerate was technical or minor and resulted in no prejudice or impairment to the lender's security interest or where the acceleration was not being exercised as a means to protect the lender's security interest but instead was motivated by inequitable considerations, such as the lender's desire to take advantage of a technical default to coerce full payment. *Id.*

12

The Uniform Commercial Code § 1-208, codified by both Massachusetts and Florida law, established that the power to accelerate shall only be used when a good faith belief that the prospect of payment or performance is impaired, ensuring a principled approach to this critical aspect of creditor-debtor relationships.

> A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import must be construed to mean that he has power to do so only if he in good faith believes that the prospect of payment or performance is impaired... § 1-208. Option to Accelerate at Will., Unif.Commercial Code § 1-208; Mass. Gen. Laws Ann. ch. 106, § 2A-109 (West); Fla. Stat. Ann. § 671.208 (West).

Established by statutory provisions, legal precedent, and the U.C.C., the good faith standard is defined as honesty in fact, and an adherence to reasonable commercial standards of fair dealing. Massachusetts and Florida have adopted this standard for "good faith," aligning closely with the provisions of the Uniform Commercial Code (U.C.C.). The old draconian "pure heart and empty head" test for good faith, which obviously gave great latitude to creditors and simultaneously placed an onerous burden of proof on debtors, is no longer applied. The evolved good faith standard has both a subjective component and an objective component requiring stricter scrutiny of the actions of creditors. In a recent amendment, Massachusetts has refined the concept of 'good faith' under the law, as detailed in Mass. Gen. Laws Ann. ch. 106, § 9-102 (West).

This updated interpretation aligns seamlessly with the Uniform Commercial Code's definition of "good faith," emphasizing the dual requirements of "honesty in fact" and the observance of "reasonable commercial standards of fair dealing." *Chitwood v. Vertex Pharms., Inc.*, 476 Mass. 667, 670, 71 N.E.3d 492, 496 (Mass., 2017).

Like Massachusetts, Florida has also embraced the modified definition of good faith under the Uniform Commercial Code. Good faith now requires "honesty in fact and the observance of reasonable commercial standards of fair dealing." Fla. Stat. § 679.1021(1)(qq) (2014) (codifying U.C.C. § 9–102(a)(4).

Thus, "good faith" now has both a subjective component (honesty in fact) and an objective component (the observance of reasonable commercial standards of fair dealing). *In re Brican Am. LLC Equip. Lease Litig.*, No. 10-MD-02183, 2015 WL 235409, at *23–24 (S.D. Fla. Jan. 16, 2015). "'[F]air dealing' includes not being an easy, safe harbor for the dishonest." *Id.* Therefore, a lender cannot ignore suspicious circumstances that cry out for investigation and then claim to have acted in good faith. *Id.*

Most importantly, it is essential to look at the contractual terms actually agreed to by the parties in the Note and First Preferred Ship's Mortgage (ECF No. 1-3). In the case at bar, the breach has purportedly arisen out of the default provision of the First Preferred Ship's Mortgage, which states that:

**"I will be in default if: I have made a false or misleading statement about any important fact in this Mortgage or in the related Promissory Note, application, or any agreement; … or anything else happens that you in good faith and with reasonable cause to believe may endanger my ability to pay this Mortgage."**

Seemingly, the Ship's Mortgage, Massachusetts, and Florida all reference and apply the evolved standard of good faith. Application of this good faith standard to the instant matter unequivocally demonstrates that UNIBANK did not act in good faith with its acceleration.

### UNIBANK'S CONDUCT CONSTITUTES BAD FAITH, AND THE ACCELERATION AND  FORECLOSURE WAS NOT REASONABLE UDER THE LAW.

As set out in the initial pleading, UNIBANK alleges KAPOOR breached the First Preferred Ship's Mortgage for two (2) separate reasons: 1) purported "false or misleading statements" in the initial application and 2) concerns/insecurity that KAPOOR was able to pay the note and mortgage.

**<u>Alleged False or Misleading Statement:</u>**

Section 24(A) of the Mortgage states, inter alia: **"I will be in default if: I have made a false or misleading statement about any important fact in this Mortgage or in the related Promissory Note, application, or any agreement …."**

UNIBANK alleges KAPOOR breached the Ship's Mortgage by making a "false or misleading statement" in the bank's generic loan application form used to begin the loan underwriting process. UNIBANK does not claim that KAPOOR actually made a "false and misleading statement" but rather insinuates that KAPOOR "intentionally omitted" language on the financial application in order to deceive and mislead UNIBANK.

As will be shown in the show cause hearing, the initial loan application is a generic bank form that serves as an authorization for UNIBANK to pull a credit report on the KAPOORS, and further provides UNIBANK with an initial overview of the assets and liabilities of KAPOORS.

At that initial stage of the loan application and underwriting process, there was no commitment by UNIBANK to the KAPOORS. The initial loan application was simply the first document to start the loan underwriting process, which ended up being a very detailed and exhaustive process. The initial loan application, which was voluntarily supplied by KAPOOR, contained no misrepresentations or false statements. This initial document simply provided a summary of known assets and liabilities to UNIBANK to begin its due diligence inquiry.

UNIBANK's alleged breach focuses, not on a particular "false or misleading statement," but rather on an alleged "omission" in the initial loan application submitted to UNIBANK. Interestingly, the portion of the document in question, Schedule D, was not part of UNIBANK's generic loan application from but rather a voluntary disclosure of KAPOOR's financial statement.

As will be demonstrated at the show cause hearing, Section D was part of KAPOOR's personal financial statement that was cut and paste into the loan application. Schedule D was a voluntary disclosure of property owned by KAPOOR or an entity in which KAPOOR may have had an interest, and contains no false or misleading statements. There was no misrepresentation.

It is anticipated that the evidence and testimony at the requested show cause hearing will demonstrate that KAPOOR voluntarily disclosed the property in question and afforded UNIBANK ample opportunity to conduct any and all diligence that it so desired.

Indeed, the evidence and testimony will demonstrate that UNIBANK conducted a very intensive and exhaustive due diligence inquiry into any and all properties owned by KAPOOR, and that UNIBANK did not suffer any prejudice or inability to research the property in question.

UNIBANK's claims of default and the arrest of the Vessel lack reasonable grounds. The allegations of "false" or "misleading" statements by UNIBANK are even more unfounded when considering the subsequent comprehensive disclosures that KAPOOR provided to UNIBANK.

Following the submission of the bank's generic form, KAPOOR diligently compiled and submitted a significant number of documents in order to facilitate the loan application process. Over a span of months, KAPOOR responded to every email question posed by UNIBANK and voluntarily provided all personal financial statements, additional tax returns, income statements, and other documents. The due diligence process was very comprehensive and encompassed questions regarding lawsuits, real estate, assets, properties, foreclosures, court searches, and more.

As is typically the case with lenders, UNIBANK left no proverbial stone unturned. KAPOOR, undeterred, continued to provide requested documents, including those related to a debt schedule and real estate owned by Location Ventures LLC. All efforts made were made in good faith and full transparency. KAPOOR's proactive disclosure of properties early on established a

16

foundation of openness. UNIBANK not only acknowledged KAPOOR's efforts but also reflected the bank's satisfaction with the faith efforts and cooperation of KAPOOR.

Each and every time that UNIBANK required additional information or documents, KAPOOR provided the same. At no time did KAPOOR ever refuse to answer questions or provide information when requested. KAPOOR was completely truthful and transparent in his response to UNIBANKS' due diligence requests for information and documentation. At the very outset, KAPOOR authorized UNIBANK to pull a credit report/search and provided an exhaustive array of documents. UNIBANK wrongfully has attempted to manufacture a narrative of wrongdoing when, in fact, KAPOOR was completely truthful and provided each and every piece of information and document requested.

A review of the evidence at the show cause hearing will demonstrate that UNBANK had unfettered access to the financial and real estate records of KAPOOR, and that UNIBANK is merely fishing for another reason to accelerate the note and mortgage.

**INSECURITY CLAUSE:**

Section 24(A) of the Ship's Mortgage states: **"I will be in default if: …anything else happens that you in good faith and with reasonable cause believe may endanger my ability to pay this Mortgage."**

UNIBANK alleges it had a good faith and reasonable basis to believe that KAPOOR's ability to pay the note and mortgage was endangered.

Notwithstanding the fact that KAPOOR had made each and every payment on a timely basis, UNIBANK's invocation of the insecurity clause appears unfounded when the underlying facts are examined.

KAPOOR's unwavering commitment to timely payments and compliance with the First Preferred Ship's Mortgage and Promissory Note's terms contradicts any notion of "endangerment" or "insecurity."

The evolved standard of good faith, encompassing honesty in fact and adherence to reasonable commercial standards of fair dealing, places the lender's actions under scrutiny for failing to communicate, investigate, or seek reassurances.

Following the completion of the closing on March 15, 2023, the KAPOOR family actively enjoyed their Vessel, traveling within South Florida and making trips to the Bahamas. KAPOOR's consistent and timely payments, along with the absence of any defaults or breaches, affirm the KAPOORS' commitment to fulfilling their financial obligations under the Note and First Preferred Ships Mortgage. Claims of insecurity by UNIBANK are hardly reasonable or believable.

First and foremost, the KAPOORS timely paid each and every monthly payment.

Second, the Vessel was properly insured and maintained by the KAPOORS.

Third, UNIBANK has a first preferred creditor's position and lien against the Vessel, seemingly beating out any and all other UCC or judgment creditors.

Lastly, the KAPOOR's substantial personal equity in the subject Vessel, evidenced by the payment of a $1,070,559.00 deposit, should have calmed any insecurity concerns.

There was no reasonable basis for UNIBANK to claim insecurity. KAPOORS has made all payments to date, and UNIBANK's position is fully protected as the first preferred lien creditor, with seemingly $1,000,000.00 worth of equity to further insulate the bank's position.

UNIBANK's sudden recourse to the insecurity clause seems inconsistent with their prior acceptance and approval of the loan. Pending lawsuits or potential legal actions did not deter UNIBANK during the initial stages of the loan application process.

Another important consideration for this Court is the fact that under the note and mortgage, UNIBANK retained the right to inspect KAPOOR's financial records and the Vessel's paperwork.

However, UNIBANK never asked KAPOOR to inspect any records, financial or otherwise, after the purchase of the Vessel was completed.

The absence of any attempt to inspect records or seek financial information before the Vessel's arrest underscores the bad-faith nature of UNIBANK's actions. Moreover, UNIBANK's abrupt arrest of the Vessel, without prior communication or attempts to discuss potential concerns, raises questions about UNIBANK's adherence to the standard of good faith.

It would be foolish to assume that UNIBANK will not attempt to argue that there was no bad faith on its part but rather that its actions were foreseeable good faith exercises of prudent business judgment. However, a simple telephone call or email request for reassurance could have easily dispelled any alleged insecurity. UNIBANK's decision to ignore circumstances that warranted proper investigation and accelerate the foreclosure process runs contrary to the reasonable commercial standards of fair dealing. The absence of any effort to mitigate damage or seek clarification from KAPOOR regarding their financial or legal situation also highlights the absence of good faith and the wrongful nature of the arrest.

In summation, KAPOOR's honesty and transparency during the loan application process are a testament to his commitment to good faith and reasonable business practices. KAPOOR was transparent in his communication and diligence in meeting the rigorous requirements of the loan underwriters. KAPOOR was guided by integrity and the highest commercial standards.

However, UNIBANK's actions fall short of the evolved standard of good faith. UNIBANK failed to act professionally and by reasonable commercial standards, let alone any common decency standard. UNIBANK never even attempted to remedy any concerns and ambushed KAPOOR when least expected. Accordingly, the wrongful arrest of the Vessel should be vacated.

## **DEFENDANTS ARE ENTITLED TO AN AWARD OF FEES AND COSTS**

Local Admiralty Rule C(7) of the Local Rules of the Southern District of Florida provides that "if the Court orders the arrest to be vacated, the Court shall award attorney's fees, costs, and other expenses incurred by any party as a result of the arrest." S.D. Fla. Local Admiralty C(7). The Local Rule also requires an award of "attorneys' fees, costs and other expenses incurred by any party as a result of the seizure" where, as here, "the seizure was predicated upon a showing of 'exigent circumstances' under Local Admiralty Rule C(2)(b), and the Court finds that such exigent circumstances did not exist." S.D. Fla. Local Admiralty Rule C(7).

The underlying facts demonstrate that UNIBANK acted in bad faith and that the arrest of the Defendant Vessel was wrongful. The KAPOORS had made all payments to date, and the arrest was predicated on a bad faith allegation claiming a breach of a technical, nonmonetary default.

WHEREFORE, Defendants respectfully move this Honorable Court to enter an order granting this Motion and declaring the arrest of the Defendant Vessel was wrongful and vacating the arrest of the "SUNSEETA II," with reasonable attorney's fees and costs assessed against the Plaintiff and all other such relief as allowable by law. Alternatively, Defendants respectfully move this Court to schedule a Rule E(4)(f) hearing and require the Plaintiff to prove, beyond the preponderance of the evidence, that 1) exigent circumstances existed, and 2) there were reasonable grounds for the arrest of the Vessel.

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies to this Honorable Court that he has conferred with opposing counsel in a good faith effort to resolve the issues but has been unable to do so.

Dated:  November 15, 2023

Respectfully submitted,

By:  _/s/ James H. Perry, II_
James H. Perry, II
Florida Bar No.: 991491
perry@maritimeattorneys.com

Michael P. Perry, Esq.
Florida Bar No.: 1048868
michaelperry@maritimeattorneys.com

PERRY & NEBLETT, P.A.
1650 SE 17th Street, Suite 200
Fort Lauderdale, FL 33316
Telephone:   954-500-1000
Facsimile:   954-500-2000
_Counsel for Defendants_

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of November 2023, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which served a copy thereof

on all counsel of record.

By: _/s/ James H. Perry, II_
James H. Perry, II
Florida Bar No.: 991491
perry@maritimeattorneys.com

Michael P. Perry, Esq.
Florida Bar No.: 1048868
michaelperry@maritimeattorneys.com

PERRY & NEBLETT, P.A.
1650 SE 17th Street, Suite 200
Fort Lauderdale, FL 33316
Telephone:  954-500-1000
Facsimile:  954-500-2000
_Counsel for Defendants_

## <u>SERVICE LIST</u>

Nicholas J. Zeher, Esq.
Fla. Bar No. 1003565
nzeher@robertallenlaw.com

Robert E. Machate, Esq.
Fla. Bar No. 1003050
rmachate@robertallenlaw.com

ROBERT ALLEN LAW
249 Royal Palm Way, Suite 301
Palm Beach, Florida 33480
Tel.:    (305) 372-3300
Fax:    (305) 379-7018
_Counsel for Plaintiff_